**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Robert E. Blackburn**

Civil Action No. 13-cv-000053-REB

ALVIN GUTIERREZ,

    Plaintiff,

v.

CAROLYN W. COLVIN,[1] Acting Commissioner of Social Security,

    Defendant.

---

**ORDER REVERSING DISABILITY DECISION,**
**DIRECTING AWARD OF BENEFITS, AND REMANDING**
**FOR DETERMINATION OF DATE OF ONSET ONLY**

---

**Blackburn, J.**

    The matter before me is plaintiff's **Complaint** [#1],[2] filed January 10, 2013, seeking review of the Commissioner's decision denying plaintiff's claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.* I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the need for oral argument. I reverse the decision and direct an award of benefits in plaintiff's favor, remanding only for the

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013, and thus her name is substituted for that of Michael J. Astrue as the defendant in this suit. **FED. R. CIV. P.** 25(d)(1). By virtue of the last sentence of 42 U.S.C. § 405(g), no further action need to taken to continue this lawsuit.

[2] "[#1]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF). I use this convention throughout this order.

purpose of establishing the alleged date of onset.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges that he is disabled as a result of post traumatic stress disorder ("PTSD"), degenerative disc disease of the lumbar spine, and obesity.[3] After his application for disability insurance benefits was denied, plaintiff requested a hearing before an administrative law judge. Following an unfavorable decision, plaintiff appealed to this court. Finding that the ALJ had failed to adequately articulate her rationale for the weights she assigned the competing medical opinions of record, I remanded the case for further proceedings. *See Gutierrez v. Astrue*, 2008 WL 5246300 (D. Colo. Dec. 15, 2008). A second hearing resulted in another unfavorable administrative decision, but the Appeals Council remanded to a different ALJ for further development of the record. (Tr. 536-538.)

A third administrative hearing – which forms the basis of the instant appeal – was held on July 24, 2012, before a new ALJ. At the time of the hearing, plaintiff was 63 years old. He has an associates degree in business management and has past relevant work experience as a kitchen helper, cashier, janitor, and printer. He did not engage in substantial gainful activity at any time relevant to the period of time under consideration by the ALJ.[4]

---

[3] Plaintiff does not challenge the ALJ's decision insofar as it addressed his physical impairment. Moreover, the ALJ found that other alleged physical impairments of plaintiff's leg and shoulder did not constitute severe impairments at step 2 of the sequential evaluation. (Tr. 484.) Plaintiff does not challenge those determinations either.

[4] In his first appeal to this court, plaintiff alleged an onset date of March 30, 1999, one day prior to his date last insured. *Gutierrez*, 2008 WL 5246300 at *3. For reasons that are not apparent from the record, the ALJ in the most recent administrative proceeding considered the date of onset as October 31, 1996, plaintiff's originally alleged date of onset. (*See* Tr. 71, 483.)

The ALJ found that plaintiff was not disabled and therefore not entitled to disability insurance benefits.  Although the medical evidence established that plaintiff suffered from severe impairments, the judge concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations.  The ALJ found that plaintiff had the residual functional capacity to perform a range of light, unskilled work with certain postural restrictions which required no direct contact with coworkers and minimal to no direct contact with the general public.  Although this finding precluded plaintiff's past relevant work, the judge concluded that there were other jobs that existed in significant numbers in the national economy he could perform.  She therefore found plaintiff not disabled at step five of the sequential evaluation.  Plaintiff appealed that decision to the Appeals Council.  The Council affirmed.  Plaintiff then filed this action in federal court.

## II.  STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if his physical and/or mental impairments preclude him from performing both his previous work and any other "substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2).  "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination."  **Campbell v. Bowen**, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)).  However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act.  To be disabling, the

claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2. The ALJ must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform his past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. § 404.1520(a)(4)(i)-(v). *See also Williams v. Bowen* 844 F.2d 748, 750-52 (10th Cir. 1988). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy. *Id.* A finding

that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. ***Casias v. Secretary of Health & Human Services***, 933 F.2d 799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. ***Hamilton v. Secretary of Health and Human Services***, 961 F.2d 1495, 1497-98 (10th Cir. 1992); ***Brown v. Sullivan***, 912 F.2d 1194, 1196 (10th Cir. 1990). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. ***Brown***, 912 F.2d at 1196. It requires more than a scintilla but less than a preponderance of the evidence. ***Hedstrom v. Sullivan***, 783 F.Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." ***Musgrave v. Sullivan***, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." ***Thompson v. Sullivan***, 987 F.2d 1482, 1487 (10th Cir. 1993). Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner. ***Id.***

### III. LEGAL ANALYSIS

Plaintiff claims the ALJ erred by giving insufficient reasons for failing to give controlling weight to the opinion of his treating source, Dr. Robert Goos. He also argues that the ALJ's residual functional capacity determination is not supportable because it is not consistent with the opinions of either Dr. Goos or the state agency physician.

Although I address the first of these issues tangentially, I find more overarching problems with the ALJ's decision, which ultimately lead me to conclude that the disability decision must be reversed and an award of benefits directed in plaintiff's favor.

Dr. Goos began treating plaintiff for PTSD in February 2005. In May 2005, he completed a Mental Impairment Questionnaire on plaintiff's behalf, in which he noted that plaintiff had "not responded thus far to treatment, likely due to fact that antidepressants cycled him into angry, irritable state – likely bipolar spectrum." Plaintiff's prognosis was listed as "guarded, with chronicity, poor." (Tr. 424.) He suggested that plaintiff was unable to meet the demands of competitive employment in most of the work aptitudes about which he was queried, and was either seriously limited or had no useful functional ability in the remainder of work-related functions. (Tr. 426-427.) He further opined that plaintiff would have marked limitation in his ability to maintain social functioning, marked deficiencies in concentration, persistence, and pace, and could be expected to be absent more than four days per month. (Tr. 428.)

In articulating this opinion, Dr. Goos stated that the "earliest date" these limitations applied was February 2005, coincident with the date he established care of plaintiff. (Tr. 429.) Plaintiff's date last insured, however, was March 31, 1999, and thus he was required to establish disability on or before that date. *See* 20 C.F.R. § 404.131(b); ***Ogden v. Astrue***, 2012 WL 917287 at *2 (D. Colo. March 19, 2012). Plaintiff's attorney therefore requested Dr. Goos to opine as to whether these limitations existed at the same level of severity as of March 30, 1999, plaintiff's amended date of onset. Dr. Goos responded:

6

> Review of his medical records, as well as my initial session with patient, show similar symptom pattern and level of function. In the March, 19, 1999 notes by his therapist, Donna Finnacle LCSW, it was noted anger, isolation, difficulties concentrating, ruminating on Vietnam, staying home all day were all present. Notes just prior to this and later in summer show similar psychological and functional profiles. In my professional opinion, he appears to have been suffering from severe limitations from his PTSD.

(Tr. 423.) This description of Ms. Finnacle's report of her March 19, 1999, appointment with plaintiff in fact states that plaintiff was experiencing problems with anger and concentration, that he was "tearful" and "appeared sad," and that he was "isolating and not very functional in his life." (Tr. 283.)

Although the ALJ gave little weight to Dr. Goos's opinion, most of the reasons on which she relied in doing so are illegitimate or insupportable. The ALJ first noted that the opinion regarding plaintiff's level of functionality in 1999 had been solicited by plaintiff's attorney. (Tr. 490.) Such an observation provides no basis in itself for rejecting an otherwise valid medical source opinion. **Hinton v. Massanari**, 13 Fed. Appx. 819, 824 (10th Cir. July 3, 2001); **Ogden**, 2012 WL 917287 at *4 n.6. Moreover, it would be equally legitimate to note that the opinion of Dr. Richard Garnand, to which the ALJ assigned "great weight," was "solicited" by the Commissioner.

Second, the ALJ noted that Dr. Goos had seen plaintiff on only two occasions at the time he proffered his opinion. (Tr. 490.) Yet she assigned great weight to the opinion of Dr. Garnand, who *never* saw plaintiff at all. It is plainly inequitable to discredit one medical source opinion for a reason that applies with equal (or in this case, greater) force to another on which so much reliance is based. **See Adamson v. Astrue**, 2012

WL 4378120 at *3 n.3 (D. Colo. Sept. 25, 2012); ***Davis v. Astrue***, 2010 WL 3835828 at *4 (D. Colo. Sept. 23, 2010).

Relatedly, the ALJ noted that Dr. Goos had not treated plaintiff during any time prior to his date last insured. Where a doctor offers an opinion based on his review of medical records for a period during which he was not actually treating the claimant, that opinion is not entitled to the deference usually afforded treating source opinions. ***See Brown v. Astrue***, 344 Fed. Appx. 16, 20-21 (5th Cir. Sept. 2, 2009); ***Monette v. Astrue***, 269 Fed. Appx. 109, 112-13 (2nd Cir. March 14, 2008) (citing ***Arnone v. Bowen***, 882 F.2d 34, 41 (2nd Cir. 1989))***; Vendetti v. Astrue***, 2010 WL 3526652 at *4 (D. Colo. Aug. 31, 2010). Nevertheless, a retrospective *opinion* is not impermissible or inherently suspect if the evidence otherwise supports a conclusion that the claimant was actually disabled prior to her date last insured.[5] ***See Potter v. Secretary of Health & Human Services***, 905 F.2d 1346, 1348-49 (10th Cir. 1990); ***Gutierrez***, 2008 WL 5246300 at *3 n.3 (noting, in prior appeal of this case, that "Dr. Goos's opinion is not a mere diagnosis, but an assessment of plaintiff's mental functional capacity prior to his date last insured"). ***See also Grebenick v. Chater***, 121 F.3d 1193, 1199 (8th Cir. 1997) (improper for an ALJ to reject doctor's retrospective diagnosis where otherwise supported by medical evidence). Moreover, and here again, Dr. Garnand's opinion was equally as retrospective, but nevertheless afforded determinative weight in the ALJ's analysis.

The only remaining reason stated by the ALJ for rejecting Dr. Goos's opinion was

---

[5] The ALJ also characterized Dr. Goos's opinion as "speculative," without further explanation. To the extent this statement was meant to refer to the retrospective nature of Dr. Goos's opinion, my analysis above shows the fallacy in such a characterization. Otherwise, such a bare conclusion is completely unreviewable.

her assessment that it was contrary to the evidence as a whole. (Tr. 490.) Yet the ALJ failed to properly tie this conclusion to the medical evidence of record, relying on voluminous exhibits without properly identifying any particular records therein that supported her findings. For example, the ALJ described plaintiff's mental health treatment as "sporadic, characterized by poor compliance with treatment recommendation[s] and failure to show up at appointments." In support of this finding, the ALJ made general reference to the entirety of exhibits 6F and 12F, comprising 114 and 52 pages, respectively, of VA hospital records. (*See* Tr. 488; Tr. 202-315, 346-394.) This court is neither required – nor, indeed, empowered – to parse through the record to find specific support for the ALJ's decision. Such generalized, global references to the record make the ALJ's opinion nearly impossible to review, and certainly do not constitute substantial evidence in support of the Commissioner's disability determination.

Moreover, even the most cursory review of these voluminous records demonstrates that the ALJ's conclusions are insupportable in any event. Although plaintiff's mental health treatment was somewhat peripatetic during the relevant time period, "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." ***Gutierrez***, 2008 WL 5246300 at *4 n.4 (quoting ***Blakenship v. Bowen***, 874 F.2d 1116, 1124 (6th Cir. 1989)) (internal quotation marks omitted). More to the point, the VA records of the treatment he did receive are replete with references showing that plaintiff's PTSD was not well controlled for the most part (*see, e.g.*, Tr. 287, 289, 300), that his condition was not stable over

any significant period of time (*see, e.g.*, Tr. 290, 291, 292, 294, 299), and that overall he was not doing well (*see, e.g.*, Tr. 290, 294).[6] Despite some waxing and waning of his symptoms, plaintiff was noted consistently to be depressed, sad, and "struggling to function in his daily life" and control his anger.  (*See, e.g.*, Tr. 297, 298, 299, 300, 305, 309-310.)  *See also* 20 C.F.R. Pt. 404, Subpt. P, app. 1, § 12.00D(2) (acknowledging that level of functioning for claimant who suffers from mental impairments "may vary considerably over time").  The ALJ's failure to acknowledge the cyclical pattern of plaintiff's symptoms smacks of "cherry picking" the record, which is improper.  *See Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004).[7]

Likewise, it misleading to suggest that plaintiff's symptoms were controlled with medication.  Although plaintiff noted some improvement on medication, he consistently described significant, undesirable side effects, most particularly an inability to concentrate or "think straight."  (*See, e.g.*, Tr. 286 (noting plaintiff "felt like a vegetable" on medication).)[8]  The record also contains several references indicating that plaintiff

---

[6] In addition, the ALJ's statement that the plaintiff's primary PTSD symptom was sleeplessness is so incomplete as to be misleading.  (Tr. 488.)  The record instead reflects that insomnia tended to exacerbate plaintiff's irritability, which resulted in the anger and aggression that were the main manifestations of his condition.  Moreover, the ALJ's suggestion that the exacerbation of plaintiff's psychological symptoms was largely related to discord in his marriage is exactly backward.  (Tr. 488.)  Instead, the record clearly shows that it was the exacerbation of plaintiff's PTSD symptoms – most specifically anger – that caused problems in his marriage.

[7] In one of the limited number of instances in which she provided a pinpoint citation to the record, the ALJ suggested that plaintiff's condition had been noted as improved just one week prior to the March 1999 notes on which Dr. Goos relied.  (Tr. 490.)  The pages cited, however, are from November and December 1998, and reflect that, following an angry outburst during group therapy, plaintiff agreed to a course of medication, but that he nevertheless was more depressed, with symptoms only marginally in control.  (Tr. 287-289.)  Further, there are no records of any treatment for the first three months of 1999 prior to plaintiff's session of March 19, 1999.  (*See* Tr. 82-83.)

[8] My own review of the record finds absolutely no support for the ALJ's suggestion that plaintiff ever complained of sexual dysfunction as a side effect of his various medications.  (Tr. 488.)

felt medication actually made his symptoms worse. (Tr. 311, 312.) A treatment that is ineffective (or worse yet, exacerbating) is no treatment at all, and a claimant cannot be faulted for failing to follow such a course of treatment. *See Shaw v. Chater*, 221 F.3d 126, 133 (2nd Cir. 2000); *Webb v. Astrue*, 2011 WL 124443 at *3 (D. Colo. Jan. 14, 2011.)

I thus find and conclude that the Commissioner's disability decision is not supported by substantial evidence. Plaintiff asks the court to forgo yet another remand and direct an award of benefits in his favor. I find the circumstances of this case present an appropriate opportunity for the exercise of my discretion in that regard. *See Nielson v. Sullivan*, 992 F.2d 1118, 1122 (10th Cir. 1993). Plaintiff filed his application for disability insurance benefits in 2004. *See Adamson v. Astrue*, 2012 WL 4378120 at *4 (D. Colo. Sept. 25, 2012) (length of time the matter has been pending relevant factor in determining whether to direct award of benefits) (citing *Salazar v. Barnhart*, 468 F.3d 615, 626 (10th Cir. 2006). I initially remanded this case because the former ALJ failed to adequately articulate good reasons to discredit Dr. Goos's opinion. Even after a third administrative hearing, the present decision suffers from the same insufficiency noted nearly six years ago. I thus am not sanguine that further remand would result in a better reasoned or better supported determination. Dr. Goos's opinion plainly supports plaintiff's claim of disability, and even though it is not entitled to controlling weight, any proper application of the Commissioner's weighing rules would require that it be afforded more weight than that of Dr. Garnand. Moreover, plaintiff is now 63 years old. All these considerations lead me to conclude that there is no reason

to further delay an award of benefits to which plaintiff plainly is entitled.  **See Railey v. Apfel**, 1998 WL 30236 at *4 (10th Cir. Jan. 9, 1998); **Nielson v. Sullivan**, 992 F.2d 1118, 1122 (10th Cir. 1993); **Emory v. Sullivan**, 936 F.2d 1092, 1095 (10th Cir. 1991).

Nevertheless, and unfortunately, I must remand to the Commissioner for the limited purpose of establishing plaintiff's date of onset.  Plaintiff's original alleged date of onset – which circumscribed that ALJ's disability decision – was October 31, 1996.  However, Dr. Goos's opinion alone is not sufficient to establish disability prior to March 30, 1999, just one day prior to plaintiff's date last insured.  The record, however, clearly demonstrates that plaintiff's mental issues were long-standing, relating back to his service in Vietnam.  The ALJ also found that plaintiff had not engaged in substantial gainful activity since his alleged date of onset.  Therefore, it appears to this court that plaintiff's condition may well have become disabling on or closer to his date last insured, and certainly prior to March 30, 1999.  However, that is not a determination this court is equipped or authorized to make.  **See Social Security Ruling** 83–20, 1983 WL 31249 at *3 (SSA 1983) ("Determining the proper onset date is particularly difficult, when, for example, the alleged onset and the date last worked are far in the past and adequate medical records are not available. In such cases, it will be necessary to infer the onset date from the medical and other evidence that describe the history and symptomatology of the disease process.").   The matter therefore must be remanded for the limited purpose of establishing the date of onset.

**THEREFORE IT IS ORDERED** as follows:

1. That the conclusion of the Commissioner through the Administrative Law

Judge that plaintiff was not disabled is **REVERSED**;

      2.  That **JUDGMENT SHALL ENTER** in favor of plaintiff against the Commissioner;

      3.  That the Commissioner is **DIRECTED** to award plaintiff benefits as of the alleged date of onset of his disability through his date last insured;

      4.  That this case is **REMANDED** to the Commissioner for the limited purpose of determining the date of onset of plaintiff's disability and thus the starting date for the award of benefits; and

      5.  That plaintiff is **AWARDED** his costs, to be taxed by the clerk of the court pursuant to **FED. R. CIV. P**. 54(d)(1) and **D.C.COLO.LCivR** 54.1, and as permitted by 28 U.S.C. § 2412(a)(1).

Dated September 9, 2014, at Denver, Colorado.

                                          **BY THE COURT:**

*[signature: Bob Blackburn]*

Robert E. Blackburn
United States District Judge